UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA B.,[1] | : | Case No. 2:22-cv-4209 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

# DECISION AND ENTRY

Plaintiff Amanda B. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #7).

## I.  Background

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on February 26, 2020, alleging disability due to several impairments, including diabetes with neuropathy, chronic obstructive pulmonary disease, asthma, and Alpha 1 anticytolysin deficiency. (Doc. #7-6, *PageID* #255). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a telephone hearing before Administrative Law Judge ("ALJ") Dianne S. Mantel. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful activity since August 1, 2018, the alleged onset date.

- Step 2: She has the following severe impairments: diabetes mellitus with neuropathy; bilateral carpal tunnel syndrome and right third trigger finger; cervical degenerative disc disease; and chronic obstructive pulmonary disease/emphysema with effusion.

- Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work [ ] except [Plaintiff] can never climb ladders, ropes, or scaffolds or crawl and can occasionally climb ramps and stairs, balance, crouch, kneel, and stoop. She must have the ability to alternate between sitting and standing, at her option, every 30 minutes for 1-2 minutes so long as she is not off task or has to leave the vicinity of the workstation. With the bilateral upper extremities, she can occasionally push and/or pull and feel and frequent[ly] handle and finger. With the bilateral lower extremities, she can occasionally push and/or pull

>           and never operate foot controls. She can have occasional concentrated exposure to extreme cold, heat, humidity, and wetness along with dust, fumes, odors, gases, and other pulmonary irritants. She cannot work around vibrations, unprotected sharp implements, unprotected heights, unprotected moving mechanical machinery, or heavy equipment. She cannot perform any commercial driving."
>
>           Plaintiff is capable of performing past relevant work as a drug and alcohol counselor. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.
>
> Step 5:   Alternatively, considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #7-2, *PageID* #s 45-56). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since August 1, 2018. *Id.* at 56.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 42-57), Plaintiff's Statement of Errors (Doc. #8), and the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.  **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In her Statement of Errors, Plaintiff raises a single assignment of error, which is that the ALJ erred in her evaluation of Plaintiff's treating physician, Jennifer Hendricks, D.O. (Doc. #8, *PageID* #s 1015-22). In response, the Commissioner maintains that the ALJ properly evaluated this assessment and that her decision is supported by substantial evidence. (Doc. #10, *PageID* #s 1029-38).

Since Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when a residual functional capacity ("RFC") is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id.* The governing regulations describe five different categories of

evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

In this case, Plaintiff challenges the ALJ's review of the medical opinion provided by her physician, Jennifer Hendricks, D.O. (Doc. #8, *PageID #s* 1015-22). In addition to the medical records submitted from her treatment of Plaintiff, Dr. Hendricks completed a medical source statement in June 2021, where she answered questions regarding Plaintiff's physical abilities and limitations. (Doc. #7-7, *PageID* #s 581-82). In the statement, Dr. Hendricks provided the following diagnoses for Plaintiff: type two diabetes mellitus with diabetic amyotrophy and long-term use of insulin; atrophy of muscles in multiple sites of the upper and lower extremity; chronic obstructive pulmonary disease; diabetic polyneuropathy; gastroparesis; esophageal candidiasis; and trigger finger. *Id.* at 581. As a result of these diagnoses, Dr. Hendricks opined that Plaintiff could not work any hours per day; could only stand fifteen minutes at one time; and could not stand at all in a

workday. *Id*. Similarly, she indicated that Plaintiff could sit for thirty minutes at a time but could not sit at all in a workday. *Id*. Dr. Hendricks also indicated that Plaintiff could lift up to five pounds; occasionally bend and use bilateral hands for fine and gross manipulation but never stoop, balance, or raise either arm above her shoulders. *Id*. at 582. As for environmental limitations, Dr. Hendricks opined that Plaintiff could frequently operate a motor vehicle and tolerate noise exposure; occasionally tolerate heat and cold; and never tolerate dust, smoke, or fumes. *Id*. She indicated that Plaintiff had both limited close and distance vision and indicated that Plaintiff 's level of pain is severe. *Id*. According to Dr. Hendricks, if Plaintiff tried to work, "it would only be for a few hours [with] no consecutive days as she has both upper [and] lower body weakness, pain, and balance instability." *Id*. Dr. Hendricks concluded that Plaintiff would be absent greater than seventy-five percent of the days each month because of her impairments and treatment. *Id*.

In reviewing Dr. Hendricks' recommended limitations, the ALJ concluded that they "are generally not persuasive" because they were "not totally consistent with or supported by the medical evidence of record." (Doc. #7-2, *PageID* #54). In support of this conclusion, the ALJ first noted that the record supported further limitations to account for Plaintiff's "decreased sensation and strength in her lower extremities" as well as additional environmental limitations because of her chronic obstructive pulmonary disease. *Id*. However, the ALJ also found Dr. Hendricks' limitations to be overly restrictive, pointing to evidence that Plaintiff "ambulated with a normal gait and appropriate balance" and could perform a variety of activities of daily living. *Id*. Specifically, the ALJ relied on Plaintiff's hearing testimony where she said "she was able to go upstairs in her home and could drive her son back and forth to school. She said she could complete

7

some chores with breaks, use a computer, do grocery shopping, and she was able to ride/drive to Georgia for a vacation." *Id.* Finally, the ALJ found no evidence in the record to support that she had any vision issues or problems dealing with noise. *Id.*

The undersigned agrees that the ALJ's supportability articulation is lacking. Again, the supportability factor assesses "the objective medical evidence and supporting explanations presented by a medical source…to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). Apart from the conclusory statement that Dr. Hendricks' limitations were "not totally consistent with or supported by the medical evidence of record[,]" the ALJ made no mention of supportability in her assessment. Indeed, the only specific commentary that the Commissioner alleges is a reference to the internal supportability of Dr. Hendricks' opinion was the ALJ's finding that there was "no evidence in the record to support that Plaintiff had any vision issues or problems dealing with noise." (Doc. #10, *PageID* #1032) (citing Doc. #7-2, *PageID* #54). According to the Commissioner, this statement could be "interpret[ed]" to "include Dr. Hendrick[s'] form as well as the record as a whole, thereby considering both supportability and consistency." *Id*. To the extent that this statement can be construed as an articulation of the ALJ's supportability analysis, the statement fails to address the many other limitations included in Dr. Hendricks' assessment. Without an articulation of whether the ALJ considered these other limitations to be supported or not, the Court cannot trace the ALJ's path of reasoning. *See Charles K. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5111, 2022 WL 1044722, at *6 (S.D. Ohio Apr. 25, 2022) ("Given the ALJ's… unexplained conclusions as to supportability and consistency, the undersigned cannot trace the ALJ's path of reasoning."); *Stacey v. Comm'r of Soc. Sec.,* 451 F. App'x 517, 519 (6th Cir. 2011)

("[T]he ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning.") (internal quotation marks and citation omitted).

Moreover, the plain language of the regulation is unquestionably clear that an ALJ must "set forth a 'minimum level of articulation'" as to how she considered the supportability and consistency factors for a medical's source's opinion. *Warren I*, 2021 WL 860506, at *8; 20 C.F.R. § 404.1520c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]") (emphasis added); 20 C.F.R. § 404.1520c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.") (emphasis added). Indeed, while the regulations allow an ALJ flexibility as to whether she needs to discuss the other factors weighing on the persuasiveness of a medical opinion, they mandate that the ALJ set forth her rationale on what are deemed to be the two most important factors—supportability and consistency. *See id*. Thus, the ALJ's failure to discuss the supportability of all of Dr. Hendricks' opinions draws into question whether the ALJ's decision "was made pursuant to proper legal standards." *See Rabbers*, 582 F.3d at 651.

Additionally, the Commissioner's *post hoc* rationalizations cannot be used to justify the ALJ's failure to follow the regulations. *See Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (unpublished table decision) (The court "may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856 (1983)). Here, the

9

Commissioner is correct that a "check-the-box" form with little to no narrative explanation is generally a sufficient reason for discounting an opinion. *Lorraine S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2257, 2022 WL 17335383, at *7 (S.D. Ohio Nov. 30, 2022) (finding the ALJ's determination that a medical opinion was not fully supported was properly considered when the opinion was in checklist form with little narrative explanation and no explanation or citations to the Plaintiff's medical records), *report and recommendation adopted,* No. 2:22-CV-2257, 2023 WL 5349521 (S.D. Ohio Aug. 21, 2023). However, it is the job of the ALJ in the first instance to articulate this reason. *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021). Indeed, it is the obligation of the ALJ "in the first instance to show his or her work*, i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source." *Id*. As such, by not explaining how she considered the factor of supportability when evaluating Dr. Hendricks' medical opinion, the ALJ failed to meet the minimum levels of articulation required by the regulations, thus frustrating the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Warren I*, 2021 WL 860506, at *8.

In short, "without fuller explanation, this court cannot engage in a meaningful review of the ALJ's decision." *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021)); *see also Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In the absence of a sufficient explanation of supportability and consistency with the record as a whole, the Court cannot

conclude that the ALJ's consideration of Dr. Rush's opinion is supported by substantial evidence . . . . Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze Dr. Rush's medical opinions pursuant to 20 C.F.R. § 404.1520c."). For these reasons, Plaintiff's Statement of Errors is well-taken.

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while

contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to a remand to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #8) is **GRANTED;**

2. The Commissioner's non-disability finding is **VACATED**;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case is terminated on the Court's docket.

January 25, 2024                                        *s/Peter B. Silvain, Jr.*
                                                        Peter B. Silvain, Jr.
                                                        United States Magistrate Judge